IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____
                                       )
WILLIAM COWARD,                        )
                                       )
                    Plaintiff,         )
                                       )
vs.                                    ) Civ. No. 16-00273 ACK-RLP
                                       )
UNITED STATES OF AMERICA,              )
                                       )
                    Defendant.         )
_____)


**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

          For the reasons set forth below, the Court GRANTS
Defendant the United States of America's Motion for Summary
Judgment, ECF No. 44.

**BACKGROUND**

          Plaintiff William Coward ("Plaintiff") has been
experiencing vision loss since September 2010 and has been
diagnosed with various eye conditions, including Glaucoma,
Central Vein Occlusion, Cystoid Macular Edema, and Cataracts.
Defendant United States' Concise Statement of Facts ¶ 2, ECF No.
45 ("U.S. CSF").  Plaintiff was prescribed eye medications in
order to treat his glaucoma and reduce eye pressure, including
Cosopt (Dorzolamide) and Lumigan.  Declaration of Jennifer
Ringwood, Attach 1-009, 1-015, 1-023.

- 1 -

On May 5, 2011, Plaintiff entered the custody of the Bureau of Prisons ("BOP") at the Federal Detention Center of Honolulu ("FDC Honolulu") to begin serving a prison sentence. U.S. CSF ¶ 1. He was prescribed Cosopt upon incarceration. U.S. CSF ¶ 7. After a June 13, 2011 office visit, he was also prescribed Latanoprost (Xalatan), but the prescribing doctor noted after a July 22, 2011 visit that no medications had apparently been initiated and repeated the prescriptions for Cosopt and either Xalatan or its pharmaceutical equivalent Lumigan. See Vickers Attach 2-009 to 2-014. On August 31, 2011, Plaintiff was transferred from FDC Honolulu to a Residential Reentry Center, after which he did not have any medical visits with or otherwise receive new treatment from a BOP medical provider. U.S. CSF ¶ 9. Plaintiff was released to home confinement on December 12, 2011 and completed his sentence on January 3, 2012. Id. ¶ 10.

Around the time his sentence ended, Plaintiff filed an administrative claim with the BOP alleging that the medical staff at FDC Honolulu was negligent in failing to administer prescribed medications to him until July 2011, which allegedly caused partial vision loss in both eyes. Plaintiff's Concise Statement of Facts ¶ 7, ECF No. 51 ("Pl. CSF"); U.S. CSF ¶ 11; Vickers Attach 2-002. The BOP denied this claim on January 20, 2016. U.S. CSF ¶ 11.

Plaintiff filed his complaint in federal court on May 31, 2016. Compl., ECF No. 1. The government filed its motion for summary judgment on April 19, 2017. ECF No. 44 ("Motion"). Plaintiff filed his opposition on July 14, 2017. ECF No. 54 ("Opp."). The government filed its reply on July 21, 2017. ECF No. 55 ("Reply"). On July 24, 2017, Plaintiff amended his concise statement of facts to specifically dispute portions of the government's statement of facts.[1] ECF No. 56. ("Pl. Am. CSF").

The Court held a hearing on the government's Motion on Wednesday, August 9, 2017.

**STANDARD**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Federal Rule of Civil Procedure ("Rule") 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's

---

[1] Plaintiff's amended statement of facts appears to be a response to the government's contention that Plaintiff should be deemed to have admitted the facts in its CSF for failure to dispute with record citations. See Reply at 2 & n.2. At the hearing, the government orally moved to strike the amended statement of facts. While the Court notes that Plaintiff's substantively amended filing does not appear proper, it is unnecessary to decide this motion in view of the Court's decision to grant summary judgment to the government.

case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Broussard v. Univ. of Cal., 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323); see also Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586–87 (1986) (citation and internal quotation marks omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it

- 4 -

could affect the outcome of the suit under the governing law."

In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing

Anderson, 477 U.S. at 248).  When considering the evidence on a

motion for summary judgment, the court must draw all reasonable

inferences on behalf of the nonmoving party.  Matsushita Elec.

Indus. Co., 475 U.S. at 587; see also Posey v. Lake Pend Oreille

Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating

that "the evidence of [the nonmovant] is to be believed, and all

justifiable inferences are to be drawn in his favor") (internal

citation and quotation omitted).

## DISCUSSION

### I.  Plaintiff's Claim and the Parties

Plaintiff claims that BOP staff negligently failed to

administer prescribed eye medications[2] to him which resulted in

vision loss, in violation of its statutory duty under 18 U.S.C.

§ 4042(a)(2) to provide the safekeeping and care of inmates.

Compl. ¶¶ 8-10, ECF No. 1; Pl. CSF ¶¶ 4-5; 18 U.S.C. §

4042(a)(2) (the BOP shall "provide suitable quarters and provide

---

[2] The parties disagree as to whether Plaintiff's claim is that he
did not receive either Cosopt (Dorzolamide) or one of the
supplemental medications Latanoprost (Xalatan) or Lumigan, or
just that he did not receive the supplemental medication.
Compare Pl. Am. CSF ¶ 1 with Declaration of Harry Yee, Ex. A
(Expert Report of Dr. David Mai) and Reply at 11-12.  As this is
a disputed fact, the Court will read the record in the light
most favorable to Plaintiff and take as true here that Plaintiff
did not receive either medication.

for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise"). This claim arises under the Federal Tort Claims Act ("FTCA"), which establishes federal jurisdiction over civil suits for money damages against the United States for

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1); Compl. ¶ 2, ECF No. 1.

In order to assert his FTCA claim, Plaintiff must show that Hawaii would recognize a cause of action in negligence against a private individual for the conduct alleged. See Bolt v. United States, 509 F.3d 1028, 1031 (9th Cir. 2007) ("As the party seeking federal jurisdiction, Bolt must therefore demonstrate that Alaska law would recognize a cause of action in negligence against a private individual for like conduct."). Plaintiff contends that his claim is merely one of simple negligence, rather than medical malpractice. See Opp. at 4. However, as the government notes, this is a distinction without a difference here. Reply at 11. "[M]edical malpractice cases

have been predicated on the negligent failure of a physician or surgeon to exercise the requisite degree of skill and care in treating or operating on a patient."[3] <u>Bernard v. Char</u>, 79 Haw. 371, 377, 903 P.2d 676, 682 (Haw. Ct. App. 1995), <u>aff'd</u> 79 Haw. 362, 903 P.2d 667 (1995). Plaintiff's claim that BOP staff "fail[ed] to take care of the inmate even after they were told what he needed," <u>see</u> Opp. at 4, is thus merely a claim for negligent failure to treat. See <u>id.</u> at 6 (noting expert opinion that "[t]he failure to properly treat Plaintiff's eye condition, glaucoma, while he was incarcerated damaged his optic nerve"). As such, this Court will treat Plaintiff's claim as one for medical malpractice. See <u>Mettias v. United States</u>, No. CIV. 12-00527 ACK, 2015 WL 1931082, at *30 (D. Haw. Apr. 21, 2015), <u>appeal dismissed</u> (Nov. 19, 2015) (analyzing FTCA claim against government hospital for injuries arising from surgery under Hawaii medical malpractice standard).

---

[3] The relevant difference between the two claims is that a medical malpractice claim, unlike ordinary negligence, generally requires that the standard of care and causation must be established through expert medical testimony, as discussed <u>infra</u> at 19-20. See <u>Bernard v. Char</u>, 79 Haw. 371, 377, 903 P.2d 676, 682 (Haw. Ct. App. 1995) (noting that the elements of negligence and medical malpractice are the same, except that "unlike the ordinary negligence case, it is the general rule that a malpractice case based on negligent treatment cannot be established without expert medical testimony to support it.").

The government also challenges the inclusion of the BOP, former BOP employee Dr. David Ackley, and the John Doe defendants as improper parties, which Plaintiff does not dispute. Motion at 3 n.1; Reply at 2 n.2; see generally Opp. The Ninth Circuit has noted that "the United States is the only proper defendant in an FTCA action." Kennedy v. U.S. Postal Serv., 145 F.3d 1077, 1078 (9th Cir. 1998). The Court thus agrees that the BOP, former BOP employee Dr. David Ackley, and the various John Doe defendants are not proper parties. See Seina v. Fed. Det. Ctr. Honolulu, No. CV 16-00051 LEK/BMK, 2016 WL 916367, at *4 (D. Haw. Mar. 7, 2016) (dismissing claim where FDC Honolulu, its Health Services Unit, the DOJ, BOP, and individual federal employees, but not the United States, were named as defendants); see also FDIC v. Craft, 157 F.3d 697, 706 (9th Cir. 2008) ("Although [FTCA] claims can arise from the acts or omissions of United States agencies...an agency itself cannot be sued under the FTCA."). Accordingly, the Court DISMISSES the BOP, Dr. David T. Ackley, and the various Doe defendants.

## II. Timely Filing of an FTCA Claim

Under 28 U.S.C. § 2401(b), "[a] tort claim against the United States must first be presented in writing to the appropriate federal agency within two years of its accrual, and suit must be brought within six months of denial of the claim by

the agency to which it was presented." Bartleson v. United States, 96 F.3d 1270, 1276 (9th Cir. 1996); 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months" after the date of the agency's notice of final denial of the claim).

Section 2401(b) is a non-jurisdictional claims-processing rule. See Kwai Fun Wong v. Beebe, 732 F.3d 1030, 1038 (9th Cir. 2013). The time limitations in § 2401(b) thus constitute an affirmative defense, which the defendant must plead and prove. See Saofaigaalii v. United States, No. 14-00455 SOM/KSC, 2016 WL 3527095, at *6 (D. Haw. June 23, 2016) ("'Because the FTCA's statute of limitations is not jurisdictional, failure to comply with it is merely an affirmative defense which the defendant has the burden of establishing.'") (quoting Schmidt v. United States, 933 F.2d 639, 640 (8th Cir. 1991)); see also Weil v. Elliott, 859 F.3d 812, 815 (9th Cir. 2017) ("A non-jurisdictional time bar is an affirmative defense....").

The issue here is whether Plaintiff's administrative claim was presented to the BOP within two years of accrual.[4] See Motion at 4; Opp. at 2-6. The BOP received Plaintiff's administrative claim as early as December 30, 2013.[5] Pl. CSF ¶ 7. Thus, in order to determine whether Plaintiff's claim is

---

[4] Plaintiff argues that because 28 U.S.C. § 2401(b) is framed in the disjunctive, his claim does not present timeliness issues as his complaint was filed in federal court within six months of when the BOP denied his administrative claim. Opp. at 2-4. However, "[e]ven though written in the disjunctive, the law is well established that a suit is time-barred unless a claim is filed with the agency within two years of accrual *and* the suit is not filed within six months of the denial of the claim." Bohol v. United States, No. CIV 10-00227 JMS/LEK, 2010 WL 2485933, at *3 n.5 (D. Haw. June 17, 2010) (emphasis in original)(citing Dyniewicz v. United States, 742 F.2d 484, 485 (9th Cir. 1984), which holds that both jurisdictional hurdles must be met); see also Sanchez v. United States, 740 F.3d 47, 50 n.6 (1st Cir. 2014) ("We read this disjunctive language as setting out two deadlines, both (not just either) of which must be satisfied."). As such, the apparent timeliness of Plaintiff's federal complaint does not resolve the instant issue of whether his administrative claim was timely filed with the BOP.

[5] The parties disagree on the exact date the BOP received Plaintiff's administrative claim. See Reply at 4; Pl. Am. CSF ¶ 2. The government asserts that the claim was received on January 3, 2014. U.S. CSF. ¶ 11. Plaintiff has provided a certified mail receipt showing that the claim was delivered on December 30, 2013. Geshell Decl., Ex. 2; see also Pl. Am. CSF ¶ 2. Because the outcome here does not depend on which of these dates is operative, the Court need not resolve that issue. In addition, the fact that Plaintiff gave a copy of his claim to FDC Honolulu on December 20, 2013 is irrelevant because the claim must have been delivered to the BOP's Western Regional Office in order to be properly presented. See 28 C.F.R. § 543.31(c) (providing that claims must be mailed or delivered to the BOP regional office of the region where the claim occurred).

time-barred, the Court must determine whether the claim accrued prior to December 30, 2011.

"The date on which an FTCA claim accrues is determined by federal law." Bartleson, 96 F.3d at 1276; see also Poindexter v. United States, 647 F.2d 34, 36 (9th Cir. 1981) (courts must look to "federal law for the limitations of time within which the action must be brought."); Santillo v. United States, No. 3:10-CV-02469 AJB, 2011 WL 2729243, at *2-3 (S.D. Cal. July 13, 2011) (noting that the FTCA, unlike § 1983 or Bivens actions, has its own statute of limitations and does not borrow state law). Thus, as the government correctly asserts and contrary to Plaintiff's contention, Hawaii Revised Statutes § 657-13, which tolls civil claims of imprisoned individuals during the period of imprisonment, did not operate to toll the two-year period on Plaintiff's claim here.[6] See Reply at 4-5; Opp. at 5-6; Haw. Rev. Stat. § 657-13; see also Warren v. CIA, 210 F. Supp. 3d 199, 203 (D.D.C. 2016) ("[T]he clock was running on plaintiff's [FTCA] claims while he was in prison and, under

---

[6] Indeed, as the government points out, § 657-13 does not toll claims made under the state tort claims act, which further confirms its inapplicability to the FTCA. Reply at 5-6; see Whittington v. Hawaii, 72 Haw. 77, 79, 806 P.2d 957 (Haw. 1991) (refusing to apply § 657-13 tolling to claims under the state tort liability act, which was modeled on the FTCA).

any of the parties' proposed dates of accrual, the claims

expired before he was released.").[7]

Rather, for a medical malpractice claim under federal

law, "accrual does not occur until a plaintiff knows of both the

existence of an injury and its cause." Hensley v. United

States, 531 F.3d 1052, 1056 (9th Cir. 2008); see also Bartleson,

96 F.3d at 1277 ("An FTCA claim accrues when the plaintiff

discovers, or in the exercise of reasonable diligence should

have discovered, the injury and its cause.") (internal citation

and quotation omitted). In a failure to treat or diagnose a

case such as this, "the injury is the *development* of the problem

into a more serious condition which poses greater danger to the

patient or which requires more extensive treatment." Augustine

v. United States, 704 F.2d 1074, 1078 (9th Cir. 1983) (emphasis

in original). "[I]t is only when the patient becomes aware or

through the exercise of reasonable diligence should have become

---

[7] In addition, Plaintiff appears to contend that he may be
entitled to equitable tolling. See Opp. at 3; Aug. 9, 2017
Hr'g; Reply at 6-7. However, Plaintiff has not sufficiently
shown that he has been diligently pursuing his rights and that
some extraordinary circumstance stood in his way such that he is
entitled to equitable tolling. See Pace v. DiGuglielmo, 544
U.S. 408, 418 (2005). The mere fact of Plaintiff's
incarceration does not constitute an extraordinary circumstance
warranting equitable tolling. See Bills v. Clark, 628 F.3d
1092, 1097 (9th Cir. 2010) ("We have long recognized a general
rule that equitable tolling is available where the prisoner can
show extraordinary circumstances were the cause of an untimely
filing.").

aware of the development of a pre-existing problem into a more serious condition that his cause of action can be said to have accrued for purposes of section 2401(b)." Id. However, "a claim does not wait to accrue until a party knows the precise extent of an injury." Raddatz v. United States, 750 F.2d 791, 796 (9th Cir. 1984); see also Mamea v. United States, No. CIV. 08-00563 LEK, 2010 WL 3384854, at *8 (D. Haw. Aug. 23, 2010) (finding that plaintiff discovered her injury when she learned that her previously diagnosed kidney stone condition had developed into acute renal failure, not when her kidneys had in fact failed).

In Augustine, the Ninth Circuit reversed the district court's dismissal of the plaintiff's medical malpractice claim as time-barred. 704 F.2d at 1079. The plaintiff alleged that Air Force dentists failed to diagnose the possible cancerous nature of a growth on his palate and failed to treat or advise him to seek further treatment of the growth. See id. at 1076. The Ninth Circuit rejected the government's argument that the plaintiff was aware of his injury for purposes of accrual when he learned of the existence of the bump and held instead that the injury at issue was the development of the bump from a controllable medical condition into an incurable metastatic cancer. See id. at 1078.

In Benitez v. United States, the court determined that the plaintiff's claim accrued when he had a seizure and injured himself falling out of his upper bunk. No. CIV. 13-00668 SOM, 2014 WL 2881452, at *7 (D. Haw. June 24, 2014). The plaintiff had informed the prison medical personnel of his seizure condition for which he had been taking medication and requested a lower bunk in order to reduce the risk of injury in the event he fell. Id. at *3. However, he was assigned to an upper bunk, and his claim accrued when he fell out of bed and was injured because he was then aware of his injury and its cause. Id. at *7.

The government argues that Plaintiff's claim accrued while he was in BOP custody from May 5, 2011 to August 31, 2011. See Motion at 4-5, 7. It is undisputed that prior to his incarceration, Plaintiff had been diagnosed with various vision problems including glaucoma, had suffered vision loss, and was using prescribed eye medication. U.S. CSF ¶¶ 2-6; Ringwood Attach 1-015 (listing continued prescriptions for Cosopt and Lumigan). Plaintiff also does not dispute that he was aware of these conditions and of the BOP's perceived deficiencies in treating these conditions while he was at FDC Honolulu. See U.S. CSF ¶¶ 7-8; Pl. CSF ¶¶ 4-5. As such, the government asserts that Plaintiff either knew or should have known of his

claim at that time.  See Motion at 5, 7 ("Plaintiff knew of his condition and its treatment during his time in custody and was therefore 'on clear notice' of any facts needed to pursue a claim.").

However, in order to establish when Plaintiff's claim accrued, the Court must determine when he was injured or should have been aware of his injury.  The government's position appears to be that since the injurious conduct by BOP medical providers occurred while he was in BOP custody, Plaintiff's claim must have accrued during that time as well.  See Motion at 4-5; Reply at 3-4.  However, accrual "is not the date on which the wrong that injures the plaintiff occurs, but the date – often the same, but sometimes later – on which the plaintiff discovers he has been injured."  Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450 (7th Cir. 1990).  As the Supreme Court has recognized, "[t]hat [the plaintiff] has been injured in fact may be unknown or unknowable until the injury manifests itself...."  United States v. Kubrick, 444 U.S. 111, 122 (1979).  As such, while the allegedly negligent acts occurred while Plaintiff was in BOP custody, it does not necessarily follow that his injury became manifest during that time.

Both parties appear to agree that Plaintiff's injury is actual eye damage and resulting vision loss, rather than the

increased risk of eye damage and vision issues from elevated eye pressure.[8] Motion at 5-6 (arguing that "Plaintiff was aware of his perceived deficiencies in the BOP's care and his alleged resulting vision loss at the time of his transfer to a residential reentry center on August 31, 2012."); Opp. at 6 (describing result of alleged negligence to be optic nerve damage). However, neither party has sufficiently pinpointed exactly when Plaintiff's eye damage and vision loss occurred or when he should have known he was injured.

In addition, the Court has been unable to locate evidence in the record supporting the government's position that Plaintiff lost vision while in custody. Indeed, the Court has not been able to determine when Plaintiff's further vision loss occurred or when he discovered damage to his optic nerve. As confirmed by the experts for both parties, Plaintiff's vision records do not appear to show any measurable change in his vision or optic nerve which might indicate injury. See Declaration of Harry Yee, Ex. A (Expert Report of Dr. David Mai) ("Mai Report") ("[T]here is no evidence in the medical record

---

[8] The Court notes that had the injury here been defined as the elevation of Plaintiff's eye pressure and the increased risk of damage to his vision and optic nerve, the Court's analysis of the record regarding whether Plaintiff knew or should have known that his glaucoma had developed into a more serious condition while he was incarcerated might differ.

for Mr. Coward losing eye function or eye tissue as a result of
not receiving Xalatan from 6/13/11 to 7/25/11."); Declaration of
R. Steven Geshell, Ex. 6, Deposition of Christopher M. Tortora,
M.D. at 42:3-24 ("Tortora Dep.") (opining that failure to
receive medications would not likely result in vision changes
over two months); 43:9-44:24 (noting that that he did not "have
any objective evidence of how much damage was done to
[Plaintiff's] vision" while he was incarcerated).

     The government also argues that the fact that
Plaintiff "expressed his displeasure" to medical staff regarding
his treatment shows his awareness of the facts giving rise to
the claim.  Motion at 5; U.S. CSF ¶ 8.  Plaintiff's medical
records note that he "verbalize[d] frustration with the prison's
medical guidelines stating 'I was treated on the outside and now
I have to start all over again.'"  Ringwood Attach 1-001.  While
this evidence supports that Plaintiff perceived the treatment to
be deficient, it does not evidence that he was or should have
been aware that he had suffered vision loss or other injury to
his eye.

     Although the Ninth Circuit has recognized that
"'identification of both the injury and its cause may be more
difficult where the claim is failure to diagnose or treat a pre-
existing condition,'" Raddatz, 750 F.2d at 796 (quoting

Augustine, 704 F.2d at 1078), it nonetheless remains the government's burden to establish when the claim accrued for purposes of a defense under § 2401(b). See Saofaigaalii, 2016 WL 3527095, at *6. As the Court cannot determine on this record as a matter of law when Plaintiff knew or should have known of his injury, it cannot conclude that that Plaintiff's claim accrued prior to December 30, 2011. See Benitez, 2014 WL 2881452, at *7 (finding that the plaintiff's claim accrued when he was injured falling out of bed, not when he informed the prison staff of his seizure condition and requested a lower bunk). Accordingly, since the government has not shown that Plaintiff's administrative claim was presented to the BOP more than two years beyond the date it accrued, the Court must DENY the government's motion on this basis.[9]

### III. Evidence of Causation and Injury

The government also asserts that it is entitled to summary judgment because Plaintiff cannot show causation and resulting injury from the alleged negligence. Motion at 9-14. Under Hawaii law, a medical malpractice claim requires the plaintiff to show: "(1) a duty requiring the defendant to conform to a certain standard of conduct, (2) a failure on the

---

[9] The Court declines to address the government's contention that Plaintiff's injury is not a continuing injury for purposes of accrual, see Motion at 6-7, as Plaintiff does not contest the government's position. See generally Opp.

defendant's part to conform to that standard, (3) a reasonably close causal connection between the conduct and the resultant injury, and (4) actual loss or damage." Mettias v. United States, No. CIV. 12-00527 ACK, 2015 WL 1931082, at *30 (D. Haw. Apr. 21, 2015), appeal dismissed (Nov. 19, 2015) (citing Takayama v. Kaiser Found. Hosp., 82 Haw. 486, 498–99, 923 P.2d 903, 915–16 (Haw. 1996)); see also Knodle v. Waikiki Gateway Hotel, Inc., 60 Haw. 376, 385, 742 P.2d 377, 383 (Haw. 1987)); Bernard, 79 Haw. at 377, 903 P.2d at 682.

"With respect to causation, '[i]n a medical malpractice action, a plaintiff must show with reasonable medical probability a causal nexus between the physician's treatment or lack thereof and the plaintiff's injury.'" Mettias, 2015 WL 1930182, at *31 (quoting Craft v. Peebles, 78 Haw. 287, 305, 893 P.2d 138, 156 (Haw. 1995)). Expert medical testimony is generally required to establish proximate or contributory causation.[10] See Barbee v. Queen's Med. Ctr., 119 Haw. 136, 158, 194 P.3d 1098, 1120 (Haw. Ct. App. 2008), as

_____

[10] In limited circumstances, Hawaii does not require expert testimony in a medical malpractice action under the common knowledge exception, which is similar to the doctrine of res ipsa loquitor. See Barbee, 119 Haw. at 159, 194 P.3d at 1121. However, this exception only applies in circumstances a lay person could easily grasp, such as a surgeon leaving a sponge inside a patient, the use of unsterile instruments, or a burn from a hot water bottle. See id. Plaintiff's case does not fit within this rarely applied exception, and thus expert testimony is required.

corrected (Nov. 5, 2008) ("[I]n a medical malpractice case, a plaintiff must establish proximate or contributory causation through the introduction of expert medical testimony."); see also Bernard, 79 Haw. at 377, 903 P.2d at 682 ("[U]nlike the ordinary negligence case, it is the general rule that a malpractice case based on negligent treatment cannot be established without expert medical testimony to support it.").

The medical opinions offered by such experts "'must be grounded upon a reasonable medical probability as opposed to a mere possibility because possibilities are endless in the field of medicine.'" Davis v. United States, No. CIV. 07-00461 ACK-LEK, 2009 WL 1455976, at *31 (D. Haw. May 26, 2009) (quoting Miyamoto v. Lum, 104 Haw. 1, 15-16, 84 P.3d 509, 523-24 (Haw. 2004)). Whether the defendant's conduct is a substantial factor in bringing about the harm is the "touchstone" of causation. Knodle, 69 Haw. at 390, 742 P.2d at 386 ("Substantial factor in bringing about the harm, therefore, is still the touchstone when the issue of causal relation must be submitted to the jury.") (internal citation and quotation omitted). "[W]hen an expert merely testifies that a defendant's action or inaction *might* or *could have* yielded a certain result, such testimony is devoid of evidentiary value and fails to establish causation." Barbee, 119 Haw. at 163, 195 P.3d at 1125 (emphasis in original).

In <u>Barbee</u>, the plaintiff experienced internal bleeding after a July 2001 surgery, which resulted in his placement in ICU and which required a second surgery. 119 Haw. at 141-42, 194 P.3d at 1103-04. After discharge, the plaintiff was admitted to the hospital on various subsequent occasions and was diagnosed with insufficient blood flow to his intestines in July 2002. <u>Id.</u> at 143, 194 P.3d at 1105. In October 2002 he was readmitted to the hospital and died in December 2002. <u>Id.</u> The evidence at trial showed that damage to the plaintiff's kidneys and brain was "ongoing and progressive," that his hemoglobin level was "likely incompatible with life," and if he had not had the first surgery, "he would not have been in ICU" the next day. <u>Id.</u> at 163, 194 P.3d at 1125. The court concluded that this "at most established that it was possible" that the defendants' actions had caused the plaintiff's death and thus did not show causation to a reasonable medical probability. <u>Id.</u> ("In effect, the jury was left to speculate that Defendants' action or inaction *might* or *could have* resulted in [the plaintiff's] death 17 months later.") (internal citation and quotation omitted).

Plaintiff contends that his expert, Dr. Tortora, opined sufficiently on causation to survive summary judgment. <u>See</u> Opp. at 6. In his report, Dr. Tortora noted that elevated eye pressure "can cause ongoing damage to the vision and

permanent damage to the optic nerve," that Plaintiff's eye pressure was "dangerously high" and thus that "there is a significant likelihood that the elevated intraocular pressure over a period of months has affected and will continue to affect his overall visual health." Tortora Report. Dr. Tortora clarified in his deposition that "by damage to his vision or by affecting his visual health, [he was] referring to the fact that the optic nerve is damaged by elevated pressure; and any damage to the optic nerve is likely to have longer-term consequences," and that his opinion was being offered to a reasonable medical probability.[11] Tortora Dep. at 44:5-9; 51:16-21.

However, even with this clarification, Dr. Tortora's statement does not create a dispute of fact on causation. Dr. Tortora testified repeatedly at his deposition that there was no objective medical evidence regarding whether Plaintiff was harmed. Tortora Dep. at 24:2-4 (Whether elevated pressure causes serious damage "varies from one individual to another and we can't tell exactly how much it affected Mr. Coward's

---

[11] The Court notes that in forming his opinion, Dr. Tortora did not examine Plaintiff and did not review Plaintiff's prison medical records, which he admitted would have been useful. Tortora Dep. at 16:12-20; 36:25-37:1; 52:5-13. Additionally, Dr. Tortora relied in part on a representation from Plaintiff's counsel that Plaintiff did not receive medication while incarcerated. Tortora Dep. at 54:12-18. As the parties dispute this fact, compare U.S. CSF ¶ 7 with Pl. Am. CSF ¶ 1, the Court will construe the record in the light most favorable to Plaintiff and take as true that he did not receive medication.

vision"); 42:22-24 ("[W]e don't really have a way to assess whether his vision got better, worse, or was affected in one way or the other."); 44:22-24 ("So, I don't have any objective evidence of how much damage was done to his vision over that time frame. So, I can only rely on what the standard of care is."); 47:15-18 ("I agree, as I stated, that there is no testing that was done prior to or after his incarceration that would be able to give us a – an assessment of whether there was damage done to his vision or not."); 48:12-15 ("There is no way to really assess whether that – what happened caused him permanent damage which is affecting his vision to this day."); 48:21-23 ("So, I agree with Dr. Mai [the government's expert] that there is no way to really assess whether damage was done to the vision and to the eye or not.").

Given that Dr. Tortora lacked objective evidence regarding whether Plaintiff's eyes and vision were damaged from the alleged negligence, an expert opinion concluding that there is a causal connection would be speculative. See Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 311 (2d Cir. 2008) ("An expert's opinions that are without factual basis and are based on speculation or conjecture are similarly inappropriate material for consideration on a motion for summary judgment."). Such speculation is insufficient to demonstrate causation and avoid summary judgment. Haines v. Honolulu

Shipyard, Inc., 125 F. Supp. 2d 1020, 1031 (D. Haw. 2000) (to avoid summary judgment, as "[a] party must set forth specific evidence to demonstrate causation, and cannot rely on mere speculation or conjecture....").

Rather, Dr. Tortora's opinion was based only on the standard of care, as he explicitly admitted at his deposition. See Tortora Dep. at 48:16-20 (Dr. Tortora's "concern is whether or not [Plaintiff] received the standard of care that he should have."); 44:22-24 (Dr. Tortora "[could] only rely on what the standard of care is."). And while Dr. Tortora indicated that it is possible for elevated eye pressure to cause eye damage and visual health issues, he admitted that the effect of elevated pressure "varies from one individual to another and we can't tell exactly how much it affected Mr. Coward's vision...." Tortora Dep. at 23:23-24:4; 42:25-43:5. Dr. Tortora's limited opinion thus does not provide a basis for a reasonable jury to conclude that the alleged negligence was a substantial factor in Plaintiff's claimed vision loss here. Knodle, 69 Haw. at 390, 742 P.2d at 386 ("Substantial factor in bringing about the harm, therefore, is still the touchstone of when the issue of causal relation must be submitted to the jury.") (internal citation and quotation omitted).

Indeed, it is undisputed that prior to his incarceration, Plaintiff had already begun to experience vision

loss.  See U.S. CSF ¶¶ 2-6 (noting that Plaintiff described his
vision as "failing" and describing poor vision measurements).
Dr. Tortora admitted in his deposition that Plaintiff's vision
improved slightly between his March 7, 2011 examination (pre-
incarceration) and his October 7, 2011 examination (post-release
from FDC Honolulu).  Tortora Dep. at 39:7-40:3.  Plaintiff now
claims that his vision has since worsened and is significantly
impaired.  See Declaration of William Coward ¶¶ 3, 7.  However,
Dr. Tortora does not address the possibility that Plaintiff's
vision might have declined further even without the alleged
negligence.  As in Barbee, a jury would be left to speculate as
to what caused the subsequent vision loss, especially in light
of the improvement in Plaintiff's vision after he was released
from FDC Honolulu.  See Barbee, 119 Haw. at 163, 194 P.3d at
1125.

        Dr. Tortora's opinion thus only establishes the
possibility that the alleged negligence caused Plaintiff's
injuries; it does not show causation to a reasonable medical
probability.  However, "[t]he mere co-existence of negligence
and injury...is not in itself sufficient to establish this
necessary causal relationship."  See Mitchell v. Branch, 45 Haw.
128, 131, 363 P.2d 969 (Haw. 1961).  Because a reasonable jury
could not find on this record that the alleged negligence caused

Plaintiff's claimed injuries, the Court accordingly GRANTS the government's Motion for Summary Judgment.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court DENIES the government's motion on the basis that the administrative claim was not timely filed but GRANTS summary judgment to the government on the basis that a reasonable jury could not find for Plaintiff on the element of causation.  The Court also DISMISSES the BOP, Dr. David Ackley, and all Doe entities as improper parties to an FTCA action.  The Court DIRECTS the Clerk to enter judgment in favor of Defendant.


IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 14, 2017.



_____
Alan C. Kay
Sr. United States District Judge


<u>Coward v. United States of America</u>, Civ. No. 16-00273 ACK-RLP, Order Granting Defendant's Motion for Summary Judgment.